# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RAYMOND A STEWART, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 06-CV-378-SAJ ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration,[1] | ) ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER[2]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Raymond A. Stewart (Plaintiff) appeals the decision of the Commissioner denying him Social Security benefits. Plaintiff asserts that the ALJ failed (1) to make a proper determination at steps 2 and 3 of the sequential evaluation process; and (2) to perform a proper credibility determination. For the reasons discussed below, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

### 1. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born on March 6, 1952, and was 53 years old at the time of the hearing in this matter. (R. 58, 161-62.) He has a high school education and past work experience as a cook and a plastic pipe coiler. (R. 73, 161-63.) He alleged that he became disabled on October 1, 2002, due to a chronic cough, choking, and seizures, as well as a skin

---

[1] Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 42 U.S.C. § 405(g) of the Social Security Act.

[2] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

disease and related tumors. (R. 72) He later claimed that he also had problems with frequent urination. (*See* R. 171, 142-48.)

Plaintiff filed his application for a period of disability, disability insurance benefits and supplemental security income on September 11, 2003.[3/] (R. 58-60,149-51.) After he was denied benefits at the initial and reconsideration determination levels, he filed a timely Request for Hearing. Administrative Law Judge (ALJ) Stephen C. Calvarese held the hearing on May 3, 2005 (*see* R. 158-88) and issued an unfavorable decision on May 20, 2005. (R. 15-22.) Plaintiff filed a Request for Review with the Appeals Council, and the Appeals Council denied Plaintiff's request on June 1, 2006. (R. 4-6.) Plaintiff now seeks judicial review.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

---

[3/] Plaintiff protectively filed on August 15, 2003. (R. 57.)

42 U.S.C. § 423(d)(2)(A).[4]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750.

"The finding of the Secretary[5] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion.

---

[4] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.972. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

[5] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.  This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### 3.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff had the following medically determinable impairments: reflux with sequelae, a slightly enlarged prostate, and a history of neurofibrositis [sic].[6/] (R. 21.)  However, the ALJ determined that Plaintiff had no impairment or combination of impairments that significantly limited Plaintiff's ability to perform basic work-related activities and thus, Plaintiff did not have a "severe" impairment as defined in the regulations.  20 C.F.R. 404.1520; 416.920.  The ALJ concluded that Plaintiff was not under a "disability" as defined in the Social Security Act, from February 27, 2004, through the date of his decision, April 12, 2006.  (*Id.*)

### 4.  REVIEW

At Step Two, the claimant must establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20

---

[6/] Plaintiff has neurofibromatosis, or von Recklinghausen's disease. (*See* R. 123, 140, 142.) Apparently, the ALJ mistakenly labelled Plaintiff's condition "neurofibrositis," which is defined as "[i]nflammation of nerve fibers and sensory nerve fibers in muscular tissue. *Taber's Cyclopedic Medical Dictionary* 1299 (17th ed. 1993).  The definition for neurofibromatosis, which is significantly more lengthy, is set forth later in this opinion.

C.F.R. §§ 404.1520, 416.920. "Basic work activities are 'abilities and aptitudes necessary to do most jobs.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (quoting 20 C.F.R. §§" 404.1521(b); 404.1521(a)).  Although the claimant need only a *de minimus* showing of an impairment at Step Two, he must show "more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). An impairment giving rise to disability benefits is one which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Therefore, "[t]he Step Two severity determination is based on medical factors alone, . . ." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003).

Social Security Ruling ("SSR") 96-3p sets forth the process for a Step Two determination: (1) the claimant must have a medically determinable impairment; (2) this impairment must reasonably be expected to produce the alleged symptoms and (3) once the claimant establishes the requisite connection between the medically determinable impairments(s) and alleged symptoms(s), the Commissioner is to then consider the "intensity, persistence, or functionally limiting effects of the symptom(s)" to determine whether the limitation is severe; that is, whether it has more than a minimal effect on the claimant's ability to do basic work activities. SSR 96-3p, 1996 WL 374181 (S.S.A.) "Only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Langley*, 373 F.3d at 1123 (citation and internal quotations omitted).

According to Plaintiff, he is unable to work primarily due to persistent coughing spells which sometimes cause him to pass out for a few seconds. (R. 165-66). As the ALJ discussed, Plaintiff visited Donald M. Dushay, D.O., in August 2003. Dr. Dushay attributed Plaintiff's coughing spasms to acid reflux and recommended that he elevate the head of his bed, take some over-the-counter medications, and lose weight. (R. 122-23.) Plaintiff subsequently visited a free medical clinic on occasion, where doctors prescribed various medications for his reflux and syncope. (R. 133-36.) In September, 2003, one of the doctors remarked that Plaintiff was "doing very well" and was "markedly improved." (R. 135.) As the ALJ discussed, a pulmonary function test taken February, 2004, revealed that Plaintiff had no significant degree of obstructive pulmonary impairment and/or restrictive ventilatory defect. (R. 20, 128.) Plaintiff claims that, due to coughing, he passed out six times during the test. (*See* R. 133, 175-76.)

Similarly, when Plaintiff began to have urinary tract problems in 2004, prostrate testing revealed that he had a prostate-specific antigen (PSA) level of 3.2. (R.143.) Urologist Clark J. Tingleaf, M.D. explained in March, 2005, that the 3.2 PSA was "somewhat high for a 54-year old gentleman," and his plan was to increase Plaintiff's medication and repeat the PSA in three months. (R. 145.) Plaintiff completed a form at Dr. Tingleaf's office indicating that he was "mostly satisfied" with the "bothersomeness of urinary symptoms." (R. 148.)

With regard to Plaintiff's coughing and his urinary tract problems, the ALJ did not err at Step Two of the sequential evaluation process. It is Plaintiff's burden, at Step Two to demonstrate, by medically accepted clinical and laboratory diagnostic techniques, that he has a medically severe impairment or combination of impairments that significantly limit his

6

ability to do basic work activities. See 20 C.F.R. §§ 404.1521, 416.972. Plaintiff failed to make the *de minimus* showing of an impairment at Step Two, or "more than the mere presence of a condition or ailment," *Hinkle*, 132 F.3d at 1352, with regard to his coughing and urinary tract problems.

However, the ALJ failed to consider whether Plaintiff's neurofibromatosis, in combination with Plaintiff's coughing and prostrate problems, was severe enough to significantly limit Plaintiff's ability to do basic work activities. In particular, he failed to consider, as required by SSR 96-3p, the "intensity, persistence, or functionally limiting effects of the symptom(s)" or whether Plaintiff's neurofibromatosis has more than a minimal effect on the claimant's ability to do basic work activities.

Neurofibromatosis is "a familial condition characterized by developmental changes in the nervous system, muscles, bones and skin and marked superficially by the formation of multiple pedunculated soft tumors (neurofibromas) distributed over the entire body associated with areas of pigmentation." *Dorland's Illustrated Medical Dictionary* 1129 (28th ed. 1994.) Another medical dictionary explains that neurofibromatosis, type 1,

> affects about 1 in 4000 persons. Clinically, there are multiple hyperpigmented areas. These appear shortly after birth and may be present any place on the body. Multiple cutaneous and subcutaneous tumors appear in late childhood. There may be a few or thousands. When the tumors are pressed, they pass through a small opening in the skin, leaving the space vacant where the tumor was in the skin. . . . In about 2% to 5% of cases, the tumors become malignant. There is no cure, and tumors that give rise to symptoms or those that become malignant need to be excised. If the tumor is on a vital nerve, excision may be impossible. Radiation therapy is of benefit.

*Taber's Medical Dictionary* 1299 (17th ed. 1993). One doctor noted that Plaintiff "literally has thousands of nodules on his face, neck and back." (R. 136.) Plaintiff testified that the

nodules cause discomfort and a lot of itching. (R. 166, 170.) He has had several cut off, but they grow back, and they grow in number and size. Further, they get snagged or cut and bleed. (R. 168.) He stated that the nodules on his feet get infected and "scab over sometimes." (R. 170-71.) They also bleed, sometimes weekly. (R. 171.)

The ALJ explored the effects of Plaintiff's skin condition at the hearing, but failed to discuss in his written decision why he rejected Plaintiff's testimony in that regard. The vocational expert testified that, if Plaintiff's testimony were accepted as credible and accurate, Plaintiff's coughing and his skin disease would interfere with Plaintiff's concentration and preclude Plaintiff's performance of any jobs in the regional or national economy. (R. 183-84.)[7/] The ALJ's failure to consider the combined effect of all of Plaintiff's impairments mandates reversal. See Langley, 373 F.3d at 1123.

## 5. CONCLUSION

Accordingly, the Court **reverses and remands** the Commissioner's decision for further proceedings consistent with this opinion.

---

[7/] Plaintiff faults the ALJ for failing to perform any credibility determination, but it is not clear that the ALJ was required to make such a determination. SSR 96-7p provides:

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

SSR 96-7p, 1996 WL 374186 at *1. However, the Tenth Circuit has emphasized that, "[t]he Step Two severity determination is based on medical factors alone, . . ." Williamson, 350 F.3d at 1100. Here, the ALJ did not discuss whether the medical record would support a finding at Step Two that Plaintiff's neurofibromatosis was severe. In fact, other than to find that it was a medically determinable impairment, the ALJ did not discuss it at all. Hence, the Court need not reach whether the ALJ erred in failing to make a credibility determination.

It is so ordered this 26th day of November, 2007.

Sam A. Joyner
United States Magistrate Judge